UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jane Doe | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL CAUSE NO. _____ |
| | § | |
| | § | |
| CoreCivic, Inc. f/k/a Corrections | § | |
| Corporation of America; CoreCivic of | § | |
| Tennessee, LLC; CoreCivic TRS, LLC; | § | |
| CoreCivic, LLC; Prison Realty | § | |
| Management, LLC; TransCor America, | § | |
| LLC; Trinity Services Group, Inc. a/k/a | § | |
| Trinity Corrections Services, Inc.; | § | |
| Robert Lacy, Jr.; David Price; Assailant | § | |
| 1; Assailant 2; Assailant 3; and the | § | |
| United States of America | § | |
| | § | |
| Defendants | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT & JURY DEMAND**

---

Plaintiff Jane Doe brings this civil action against Defendants CoreCivic, Inc.,

formerly known as Corrections Corporation of America, CoreCivic of Tennessee, LLC,

CoreCivic TRS, LLC,  CoreCivic, LLC, Prison Realty Management, LLC, TransCor

America, LLC, and Trinity Services Group, Inc. a/k/a Trinity Corrections Services, Inc.

(collectively, the "CoreCivic Defendants"); Robert Lacy, Jr.; David Price; three male

assailants whose names are unknown, Assailant 1, Assailant 2, and Assailant 3

(collectively, the "Assailants" or the "Assailant Defendants"); and the United States of

America, the Department of Homeland Security, and Immigration and Customs Enforcement ("United States").

## I.   PRELIMINARY STATEMENT

1.      This suit seeks to hold the United States of America and CoreCivic—one of the nation's largest private prison companies—to account for their role in the attack and sexual assault of Plaintiff Jane Doe while she was in the custody and control of the United States Immigration and Customs Enforcement agency ("ICE") at its Houston Processing Center.

2.      The Houston Processing Center is owned and operated by CoreCivic, Inc., which was formerly known as Corrections Corporation of America. As the first private, for-profit prison company in the United States, CoreCivic has a long and well-documented history of abusing, mistreating, and endangering its detainees across the country. Nonetheless, ICE has contracted with CoreCivic to operate the Houston Processing Center at CoreCivic's property in Houston since at least 2003.

3.      In 2018, Plaintiff Jane Doe, who is a citizen of Mexico, spent approximately three months in ICE custody at the Houston Processing Center. The afternoon before Plaintiff was scheduled to be released to Mexico, she and two other female detainees were removed from the general detainee population and taken to a dark cell in an isolated area of the facility. Female detainees were typically housed in groups of 20-30, but for the first time in three months, Plaintiff was sequestered with just two other women in a different area of the facility she had never seen.

4.      Around midnight, three men entered the isolated cell and brutally attacked and sexually assaulted Plaintiff and the two other women. Just hours later, all three women—injured and still shaken from the attack—were placed on a bus and deported to Mexico.

5.      Several weeks later, after arriving back to her hometown in rural Mexico, Plaintiff realized that she was pregnant as a result of being vaginally raped during the attack. Plaintiff subsequently gave birth to a child fathered by her rapist and suffered life-threatening medical complications during her pregnancy and birth.

6.      This is a civil action for monetary relief for injuries Plaintiff sustained as a result of the acts and omissions of CoreCivic, Warden Robert Lacy, Jr., Assistant Warden David Price, TransCor America, LLC, Trinity Services Group, the United States of America, the Department of Homeland Security, and ICE, in perpetrating, allowing, or failing to prevent Plaintiff from being attacked and sexually assaulted while she was detained in at the Houston Processing Center. Plaintiff seeks to hold Defendants accountable for the suffering and injuries she endured as a result of the attack while she was in the care and custody of CoreCivic and the U.S. government. These Defendants, both individually and collectively, were responsible for the assaults and resulting trauma in that they failed to implement and enforce relevant contracts, policies, and standards clearly and obviously designed to protect Plaintiff and other women like her. Plaintiff further seeks to hold accountable the three Assailants who attacked her but whose names are currently unknown.

## II.    PARTIES

7.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

8.    Plaintiff, Jane Doe, is an individual and a former detainee of the Houston Processing Center who was attacked and sexually assaulted as a result of Defendants' misconduct, failures, acts, and omissions. Plaintiff is a resident and citizen of Mexico. Plaintiff's name has been withheld from this Complaint to protect her identity as this action involves sexual assault.[1]

9.    Defendant CoreCivic, Inc. is a corporation that is incorporated under the laws of the State of Maryland. Upon information and belief, Defendant CoreCivic, Inc. has its principal place of business in the State of Tennessee. Defendant may be served with process by serving its registered agent, CT Corporation System, at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136. Upon information and belief, Defendant CoreCivic, Inc. was formerly known as Corrections Corporation of America.

10.    Defendant CoreCivic of Tennessee, LLC is a limited liability company formed under the laws of the State of Tennessee. Upon information and belief, Defendant CoreCivic of Tennessee, LLC has its principal place of business in the State of Tennessee. Defendant may be served with process by serving its registered agent, CT Corporation System, at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136. Upon

---

[1] Plaintiff is seeking an order of the Court to proceed under the pseudonym Jane Doe and a protective order allowing disclosure of Plaintiff's identity thereafter and the conditions for disclosure and confidentiality.

information and belief, Defendant CoreCivic of Tennessee, LLC was formerly known as CCA of Tennessee, LLC and CCA Corrections of Tennessee, LLC.

11.     Defendant CoreCivic TRS, LLC is a limited liability company formed under the laws of Maryland. Upon information and belief, Defendant CoreCivic TRS, LLC has its principal place of business in the State of Tennessee. Defendant may be served with process by serving its registered agent, The Corporation Trust, Incorporated, at 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093-2264.

12.     Defendant CoreCivic, LLC is a limited liability company formed under the laws of Delaware. Upon information and belief, Defendant CoreCivic TRS, LLC has its principal place of business in the State of Tennessee. Defendant may be served with process by serving its registered agent, The Corporation Trust Company, at Corporation Trust Center 1209 Orange St, Wilmington, Delaware 19801.

13.     Defendant Prison Realty Management, LLC is a limited liability company formed under the laws of the State of Tennessee. Upon information and belief, Defendant Prison Realty Management, LLC has its principal place of business in Tennessee. Defendant may be served with process by serving its registered agent, CT Corporation System, 300 Montvue Rd., Knoxville, Tennessee 37919-5546.

14.     Defendant TransCor America, LLC is a limited liability company formed under the laws of the State of Tennessee. Upon information and belief, Defendant TransCor America, LLC has its principal place of business in the State of Tennessee. Defendant TransCor America, LLC may be served with process by serving its registered

agent, CT Corporation System, at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136. Upon information and belief, TransCor America, LLC contracted with CoreCivic and/or the United States to provide transportation services at the Houston Processing Center.

15.     Defendant Trinity Services Group, Inc. a/k/a Trinity Corrections Services, Inc. a/k/a Trinity Food Services is a corporation formed under the laws of the State of Florida. Upon information and belief, Defendant Trinity Services Group, Inc. has its principal place of business in the State of Florida. Defendant Trinity Services Group, Inc. may be served with process by serving its registered agent, Cogency Global Inc., at 1601 Elm Street, Suite 4360, Dallas, Texas 75201-3136. Upon information and belief, Trinity Services Group, Inc. contracted with CoreCivic and/or the United States to provide food services at the Houston Processing Center.

16.     Defendant Robert Lacy, Jr. is an individual and a citizen of Texas who, upon information and belief, may be served with process at 15850 Export Plaza Drive, Houston, Texas 77032. Upon information and belief, Defendant Lacy was the Warden and Facility Leader of the Houston Processing Center at all times relevant.

17.     Defendant David Price is an individual and a citizen of Texas who, upon information and belief, may be served with process at 15850 Export Plaza Drive, Houston, Texas 77032 . Upon information and belief, Defendant Price was the Assistant Warden of the Houston Processing Center at all times relevant.

18.     Defendant Assailant 1 is an individual whose name is unknown to Plaintiff.  Assailant 1 entered the isolated cell in the Houston Processing Center where

Plaintiff and two other women were being held and attacked and sexually assaulted the women.

19.     Defendant Assailant 2 is an individual whose name is unknown to Plaintiff. Assailant 2 entered the isolated cell in the Houston Processing Center where Plaintiff and two other women were being held and attacked and sexually assaulted the women.

20.     Defendant Assailant 3 is an individual whose name is unknown to Plaintiff. Assailant 3 entered the isolated cell in the Houston Processing Center where Plaintiff and two other women were being held and attacked and sexually assaulted the women.

21.     Defendant the United States of America may be served by emailing a copy of the summons and of the complaint to USATXS.CivilNotice@usdoj.gov and by sending a copy of the summons and of the complaint by registered or certified mail to the Civil Process Clerk, United States Attorney's Office for the Southern District of Texas, 1000 Louisiana St., Suite 2300, Houston, Texas 77002 (*see* Dept. of Justice, U.S. Attorney's Office, S.D. TX, *Service of Process on the United States Attorney in Civil Cases Due to COVID-19 Concerns* (April 1, 2020), https://www.justice.gov/usao-sdtx/pr/service-process-united-states-attorney-civil-cases); and by sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States, Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C., 20530, and also to the Office of the General Counsel, U.S. Department of Homeland of Security, 2707 Martin Luther King Jr. Ave. SE, Washington,

D.C. 20528-0485, and Office of the Principal Legal Advisor, Immigration and Customs

Enforcement, U.S. Department of Homeland Security, 500 12th Street SW, Washington,

D.C. 20024.

### III.   JURISDICTION

22.     Plaintiff realleges and incorporates by reference the allegations contained

in the preceding paragraphs.

23.     The Court has original jurisdiction over Defendant United States of

America under 28 U.S.C. § 1346(b)(1) because this is a civil action on claims against the

United States, for money damages, accruing on or after January 1, 1945, for injury and

personal injury caused by the negligent or wrongful acts or omissions of employees of

the United States government while acting within the scope of their office or

employment, under circumstances where the United States, if a private person, would

be liable to the claimant in accordance with the law of the state of Texas, where the acts

or omissions occurred. *See* 28 U.S.C. § 1346(b)(1). As set forth in greater detail in this

Complaint, Plaintiff suffered personal injury and incurred damages proximately caused

by the negligent or wrongful acts or omissions of employees of the United States

government, including but not limited to employees of the United States Immigration

and Customs Enforcement agency, the Department of Homeland Security, and/or

CoreCivic, Inc. These employees were acting in the course and scope of their

employment with the United States government when they committed acts or

omissions that perpetrated, allowed, and/or failed to prevent the attack and sexual

assault of Plaintiff while she was in the custody, care, and control of the United States

government at an immigration detention center located in Houston, Texas. The United States government, if it were an individual person, would be liable to Plaintiff under the law of the state of Texas for these acts and omissions as set forth herein.

24.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims against Defendants CoreCivic, Inc., CoreCivic of Tennessee, LLC, Prison Realty Management, LLC, TransCor America, LLC, Trinity Services Group, Inc. a/k/a Trinity Corrections Services, Inc., Assailant 1, Assailant 2, and Assailant 3, Robert Lacy, Jr., and David Price. *See* 28 U.S.C. § 1367(a). Plaintiff's claims against the CoreCivic Entities, the Assailants, Lacy, and Price are so related to the claims in the action against the United States that they form part of the same case or controversy under Article III of the United States Constitution. Specifically, Plaintiff's claims against these Defendants arise from a common nucleus of operative facts—the same attack and sexual assault on Plaintiff that occurred on or about June 1, 2018 at the Houston Processing Center, which forms the basis of Plaintiff's claims against the United States.

25.     Additionally and in the alternative, the Court has diversity jurisdiction over Plaintiff's claims against the remaining Defendants, CoreCivic, Inc., CoreCivic of Tennessee, LLC, Prison Realty Management, LLC, TransCor America, LLC, Trinity Services Group, Inc. a/k/a Trinity Corrections Services, Inc., Assailant 1, Assailant 2, and Assailant 3, Robert Lacy, Jr., and David Price, under 28 U.S.C. § 1332(a)(3) because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000, excluding interest and costs. *See* 28 U.S.C. § 1332(a)(3). Plaintiff is a citizen and resident of a foreign state, Mexico.

26.     The Court has general personal jurisdiction over the CoreCivic Defendants (CoreCivic, Inc., CoreCivic of Tennessee, LLC, CoreCivic TRS, LLC, CoreCivic, LLC, Prison Realty Management, LLC, TransCor America, LLC, and Trinity Services Group, Inc. a/k/a Trinity Corrections Services, Inc.), by virtue of their continuous and systematic contacts with the state of Texas as to render them essentially at home in the state of Texas. Upon information and belief, CoreCivic, Inc., CoreCivic of Tennessee, LLC, Prison Realty Management, LLC, TransCor America, LLC, Trinity Services Group, Inc. a/k/a Trinity Corrections Services, Inc. are registered to do business in the state of Texas. Upon information and belief, CoreCivic owns the facility and real property that houses the Houston Processing Center in Houston, Texas. Additionally, upon information and belief, since at least 2003, the CoreCivic Defendants contracted with the United States, the Department of Homeland Security, and the Immigration and Customs Enforcement agency to operate the Houston Processing Center. Upon information and belief, the CoreCivic Defendants were operating at the Houston Processing Center pursuant to that contractual agreement at the time of the events giving rise to Plaintiff's claims.

27.     In the alternative, the Court has specific personal jurisdiction over the CoreCivic Defendants because Plaintiff's claims against these Defendants arise out of or relate to a contact between Defendants and the state of Texas. Plaintiff was attacked and sexually assaulted at the Houston Processing Center in Houston, Texas, which was, upon information and belief, operated by the CoreCivic Defendants. Plaintiff's claims

against the CoreCivic Defendants arise from and directly relate to that occurrence and contact with the state of Texas.

28.     The Court has general personal jurisdiction over Defendant Robert Lacy Jr. and Defendant David Price by virtue of their continuous and systematic contacts with the state of Texas. Upon information and belief, Defendants Lacy and Price are residents of the state of Texas. Defendant Lacy has been the Warden of the Houston Processing Center since 2006. Defendant Price is the Assistant Warden of the Houston Processing Center.

29.     The Court has specific personal jurisdiction over Defendants Assailant 1, Assailant 2, and Assailant 3 because Plaintiff's claims against them arise out of or relate to a contact between them and the state of Texas. The Assailant Defendants attacked and sexually assaulted Plaintiff at the Houston Processing Center in Houston, Texas. Plaintiff's claims against these Defendants arise from that occurrence and Defendants' contact in the state of Texas.

## IV.   VENUE

30.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

31.     Venue is proper in this district and division under 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to these claims occurred in this district. The events giving rise to many of Plaintiff's claims primarily occurred in Houston, Texas, Harris County, which sits in the United States District Court, Southern District of Texas. Plaintiff suffered injuries after being

attacked and sexually assaulted while detained at the Houston Processing Center in Houston, Texas.

## V.   CONDITIONS PRECEDENT

32.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

33.     All conditions precedent have occurred or have been performed. Fed. R. Civ. P. 9(c).

34.     Plaintiff timely presented this claim in writing to Defendant the United States. The United States failed to make a final disposition of the claim within six months after it was presented, or this suit is filed within six months after the agency's final written notice of its denial of the claim. *See* 28 U.S.C. §§ 2401(b), 2675(a).

## VI.   STATEMENT OF FACTS

### A.   ICE has a well-documented history of rampant sexual abuse within its privately-run immigration detention facilities.

35.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

36.     The fastest growing category of federally incarcerated people is those in custody of federal immigration enforcement agencies, such as the United States Immigration and Customs Enforcement ("ICE").[2]  ICE detains hundreds of thousands of people each year; on average, more than 50,000 people are in immigration

---

[2] Danielle C. Jefferis, *Delegating Care, Evading Review: The Federal Tort Claims Act and Access to Medical Care in Federal Private Prisons*, 80 La. L. Rev. 37, 41 n.16 (2019).

confinement each day, with nearly 70% of those people in the custody of private, for-profit prisons throughout the United States.[3]

37.     ICE has long possessed information that the detainees in its custody are subject to high risk of sexual assault. As early as 1998, ICE's predecessor, the Immigration and Naturalization Service ("INS"), was defending lawsuits brought by immigration detention center residents alleging rampant sexual abuse (*see, e.g., Jama v. U.S. I.N.S.*, 22 F. Supp. 2d 353 (D.N.J. 1998)) and was involved in investigations of employees accused of such abuse (*see, e.g., U.S. v. Akram*, 152 F.3d 698 (7th Cir. 1998)).

38.     By way of example, a 2000 Department of Justice investigation revealed that "roughly 10 percent" of female detainees at the INS Krome Service Processing Center in Miami, Florida "had come forward with reports of sexual misconduct by INS officers that included sexual harassment, fondling during searches, and sexual assault."[4]

39.     And in 2002, Tony Hefner, a former security guard at the Port Isabel Service Processing Center in Los Fresnos, Texas, published Between the Fences: Inside a U.S. Immigration Camp, in which he detailed a wide variety of instances in which detention officers either solicited sexual favors in exchange for preferential treatment or other considerations or simply forced detainees to have sex.[5] Hefner recounted having

---

[3] *Id.* (citing Danielle C. Jefferis, *Constitutionally Unaccountable: Privatized Immigration Detention*, 95 Ind. L.J. 145 (2020)).
[4] National Prison Rape Elimination Commission Report, June 2009, at 175.
[5] Tony Hefner and Jacalyn McLeod, *Between the Fences: Inside a U.S. Immigration Camp* (2002), pp. 14-16, 28-32, 36-40, 45-49, 59-67, 89-90, 92-94.

received a memo on this topic from the Supervisor of Detention and Deportation at the

facility which stated:

> It is only when [detainees] realize that the predators threatening their
> dignity and human rights are (the ones) keeping them detained, do they
> start to panic. . . . All paperwork that a detainee signs, (advises) him/her
> that they [sic] will be protected during their deportation process. But, the
> unofficial understanding informs them, you do what I tell you, or order
> you to do, and everything will be okay. The most common threat is,
> cooperate, or I will deport you.[6]

40.     In 2003, Congress enacted the Prison Rape Elimination Act ("PREA"), in

which it specifically found, among other things, that (1) "[m]ost prison staff are not

adequately trained or prepared to prevent, report, or treat inmate sexual assaults," (2)

"[p]rison rape often goes unreported, and inmate victims often receive inadequate

treatment for the severe physical and psychological effects of sexual assault--if they

receive treatment at all," and (3) "[v]ictims of prison rape suffer severe physical and

psychological effects that hinder their ability to integrate into the community and

maintain stable employment upon their release from prison." 34 U.S.C. § 30301.

Congress further found that "[t]he high incidence of sexual assault within prisons

involves actual and potential violations of the United States Constitution," and "[s]tates

that do not take basic steps to abate prison rape" demonstrate "indifference" to those

constitutional rights. *Id.*

41.     The Department of Homeland Security and ICE expressly adopted PREA

into their standards in 2007.[7] In doing so, ICE observed:

---

[6] *Id.* at 29.
[7] ICE/DRO Residential Standard: Sexual Abuse and Assault Prevention and Intervention (Dec. 21, 2007),
https://www.ice.gov/doclib/dro/family-residential/pdf/rs_sexual_assault_prevention-
intervention.pdf.

The Prison Rape Elimination Act of 2003 (PREA) sets a "zero tolerance" standard regarding rape and sexual assault in "any confinement facility of a Federal, state, or local government, whether administered by such government or by a private organization."

Research indicates that a small percentage of individuals express aggression and seek to dominate others through violent sexual behavior. Forceful and pressured sexual interactions are among the most serious threats to resident safety and institutional order. Victims may suffer physical and psychological harm, and could be infected with a life-threatening disease.

Not only does ICE/ORO expect all facilities to affirmatively act to prevent sexual abuse and assaults on ICE/ORO residents, but it also takes very seriously all allegations of sexual misconduct and assault against any ICE/ORO resident in any facility. Every allegation is reviewed and, where warranted, referred for criminal prosecution, with a "zero-tolerance" standard.[8]

42.     Pursuant to PREA, ICE developed standards prohibiting "[o]ne or more residents engaging in a sexual act with another resident or the use of threats, intimidation, inappropriate touching, or other actions and or communications by one or more residents aimed at coercing and or pressuring another resident to engage in a sexual act." *Id.* Additionally, recognizing the inherent power dynamics between immigration officers/staff and the detainees in their custody, ICE further prohibited officers/staff from "[e]ngaging in, or attempting to engage in a sexual act with any resident or the intentional touching of an resident's genitalia, anus, groin, breast, inner thigh, or buttocks with the intent to abuse, humiliate, harass, degrade, arouse, or gratify the sexual desire of any person" and further noted that "[s]exual acts or contacts between a resident and a staff member, even when no objections are raised, are always illegal." *Id.*

---

[8] *Id.*

43.     Congress promulgated PREA regulations in 2012. *See* 28 C.F.R. §§ 115 *et seq.* CoreCivic claims to have adopted these standards as well.[9]

44.     In 2009, ICE published a report by Dr. Dora Schrior titled "Immigration and Detention Overview and Recommendations," which was promoted as a blueprint for forthcoming reforms.[10] The report set forth numerous recommendations for the treatment of female detainees, including that the population of women in ICE custody should be consolidated into facilities "modified to meet their special requirements for safety and well-being." The report observed that numerous facilities housing women were staffed primarily by men and recommended that female staff should be assigned to supervise the female population. The report also recommended that the use of segregation or isolation cells for women should be discontinued immediately.

45.     Since the enaction of PREA, ICE and private prison companies like CoreCivic that contract to operate the detention facilities where a large percentage of people are held in immigration detention claim to have a "zero tolerance" policy towards sexual assault.[11] Nonetheless, sexual abuse continues to run rampant in ICE detention facilities: 33,126 complaints of sexual and/or physical abuse were still filed between January 2010 and July 2016, according to data outlined in a 2017 civil rights complaint filed by Community Initiatives for Visiting Immigrants in Confinement

---

[9] CoreCivic, *The Prison Rape Elimination Act of 2003 (PREA)*, https://www.corecivic.com/the-prison-rape-elimination-act-of-2003-prea.

[10] Dora Schrior, *Immigration Detention Overview and Recommendations*, U.S. Dept. of Homeland Security, Immigration and Customs Enforcement (Oct. 6, 2009), https://www.ice.gov/doclib/about/offices/odpp/pdf/ice-detention-rpt.pdf.

[11] CoreCivic, *The Prison Rape Elimination Act of 2003 (PREA)*, https://www.corecivic.com/the-prison-rape-elimination-act-of-2003-prea; CoreCivic 2017 PREA Annual Report, at p. 2, https://www.corecivic.com/hubfs/_files/PREA/2017-PREA%20AnnualReport-FINAL5.pdf.

("CIVIC") with the U.S. Department for Homeland Security.[12] Of those 33,126 complaints, officials investigated only 225, or 0.07%.[13]

46.      Between May 2014 and July 2016 alone, the Department of Homeland Security's Office of the Inspector General received at least 1,016 reports of sexual abuse filed by people in immigration detention—meaning that the Office of the Attorney General received on average of more than one complaint of sexual abuse from people in immigration detention *per day* during that time period.[14] Yet, the Office of the Attorney General investigated just 24 (or 2.4%) of those complaints.[15] And in addition to those 1,016 complaints of sexual abuse/assault reported by people in detention, CIVIC found that there were also 402 complaints of "coerced sexual contact," 196 complaints of "sexual harassment," and 380 complaints of "physical or sexual abuse" lodged against ICE during that time period.[16]

47.      Between October 2003 and July 2018, at least 185 people died in immigration prisons and jails, and at least 22 more have died in the past two years.[17]

---

[12] Community Initiatives for Visiting Immigrants in Confinement (CIVIC), *Sexual Abuse, Assault, and Harassment in U.S. Immigration Detention Facilities Complaint*, (April 11, 2017), http://www.endisolation.org/wp-content/uploads/2017/05/CIVIC_SexualAssault_Complaint.pdf.
[13] Adolfo Flores, *Few Complaints of Sexual Abuse Inside Immigrant Detention Centers Are Investigated, Report Finds*, BuzzFeed News, (April 11, 2017), https://www.buzzfeednews.com/article/adolfoflores/sexual-assault-complaints-at-detention-centers.
[14] CIVIC, *Watchdog Organization Files Civil Rights Complaint Alleging Rising Sexual Abuse, Assault, and Harassment in U.S. Immigration Detention Facilities* (April 11, 2017), http://www.endisolation.org/sexual-assault-in-immigration-detention/.
[15] *Id.*
[16] *Id.*
[17] Danielle C. Jefferis, *Constitutionally Unaccountable: Privatized Immigration Detention*, 95 Ind. L.J. 145, 173-74 (2020) (citing Emily Ryo & Ian Peacock, *The Landscape of Immigration Detention in The United States* 6 (2018)).

48.     At least 76 immigrant detention centers have reported instances of sexual assault.[18] Data collected by CIVIC shows that more sexual assault complaints were submitted against ICE than any other Department of Homeland Security component agency, and the immigration detention facilities with the highest rates of sexual assault complaints between 2010 and 2016 were privately run—by CoreCivic and its main competitor, GEO Group.[19]

**B.     CoreCivic has a long and well-documented history of abusing, mistreating, and endangering detainees.**

49.     CoreCivic—formerly known as Corrections Corporation of America—was the nation's first private, for-profit prison company. Incorporated in 1983, it grew rapidly in the 1980s as it capitalized on the record inmate populations produced by the war on drugs and mandatory minimum sentencing laws.[20] Today, CoreCivic is one of the largest private prison companies in the United States, and it owns and manages over a hundred correctional, detention, and other residential reentry facilities.[21]

50.     For decades, CoreCivic has profited at the expense of the health and lives of the people whom the company imprisons and detains. From just June 2017 to June 2019, CoreCivic received over $1.2 billion dollars in United States government contracts and revenue, a 6% increase in federal contract revenue.[22]

---

[18] Flores, *supra* note 13.

[19] CIVIC Complaint, *supra* note 12.

[20] "CCA - Our History," http://www.correctionscorp.com/our-history; Eric Schlosser, *The Prison-Industrial Complex*, The Atlantic (Dec. 1998), https://www.theatlantic.com/magazine/archive/1998/12/the-prison-industrial-complex/304669/ .

[21] CoreCivic, *Facilities*, https://www.corecivic.com/facilities; *CoreCivic Inc*, Investigate, American Friends Service Committee (July 19, 2019), https://investigate.afsc.org/company/corecivic.

[22] Alan Zibel, *Detained for Profit: Spending Surges Under U.S. Immigration Crackdown*, Public Citizen (Sep. 18, 2019), https://www.citizen.org/article/detained-for-profit-spending-surges-under-u-s-immigration-crackdown/.

51.     Yet, investigations by journalists and oversight committees continue to uncover serious inadequacies in the treatment of people detained at CoreCivic facilities across the country.[23] Scathing audits, such as those recently performed by the State of Tennessee, have found that CoreCivic runs its facilities at bare minimum staffing levels, putting inmates and detainees at risk of assault, sexual abuse, and death, and depriving them of necessary mental health and medical care.[24] Dozens of detainees have died in CoreCivic facilities in recent years.[25] And in many cases, CoreCivic has been found to have failed to properly report vital data related to inmate deaths, inmate assaults, correction officers' use of force, and facility lockdowns.[26]

52.     CoreCivic's facilities are notorious for their history of sexual abuse of women in their custody. For example, the T. Don Hutto Family Residential Center ("Hutto") in Taylor, Texas began operating as a family immigration detention facility for ICE in 2006. Repeated protests, media scrutiny, litigation, and congressional inquiries have revealed the appalling conditions and treatment of the family detainees

---

[23] *See, e.g., Audit of the United States Marshals Service Contract No. DJJODT7C0002 with CoreCivic, Inc., to Operate the Leavenworth Detention Center*, Leavenworth, Kansas, Office of the Inspector General, U.S. Department of Justice (April 2017), https://oig.justice.gov/reports/2017/a1722.pdf; Seth Freed Wessler, *The 25 Men Whose Lives Ended Under Questionable Circumstances*, Nation (Jan. 28, 2016), https://www.thenation.com/article/25-deaths-in-contract-facilities/.
[24] *Scathing State Audit Slams Tennessee prisons, CoreCivic for Staffing, Sexual Assaults, and Deaths in Jails*, News Channel 5 Nashville (Jan. 10, 2020), https://www.newschannel5.com/news/scathing-state-audit-slams-tennessee-prisons-corecivic-for-staffing-sexual-assaults-and-deaths-in-jails; Tennessee Comptroller of the Treasury, *Performance Audit Report – Department of Correction* (Jan. 2020), https://ewscripps.brightspotcdn.com/3b/f5/d2a1a4114ca9888b607ac30a9d0b/embargoed-tdoc-audit-2020.pdf.
[25] Jeanne Kuang, *Immigration Detention Deaths Reach the Highest Total Since 2009*, Houston Chronicle (Jan. 12, 2018), https://www.houstonchronicle.com/news/houston-texas/houston/article/Immigration-detention-deaths-reach-the-highest-12494624.php; Nina Bernstein, Margot Williams, *Immigration Agency's Revised List of Deaths in Custody*, The New York Times (April 2, 2009), https://www.nytimes.com/2009/04/03/nyregion/03detainlist.html.
[26] Tennessee Comptroller of the Treasury, *supra* note 24.

held there.[27] Hutto has been investigated multiple times for federal sexual abuse violations and was the subject of a class action lawsuit filed by the American Civil Liberties Union in 2011 on behalf of immigrant women who alleged they were sexually assaulted while in ICE custody at the facility.[28] A CoreCivic employee at Hutto was convicted of sexually abusing at least 8 female immigrant detainees between October 2009 and May 2010 while transporting them from Hutto upon their release from the facility.[29] And even CoreCivic's own female employees have alleged that they, too, are subject to a culture of sexual harassment and discrimination while working at its facilities.[30]

53.     Defendant TransCor, which is owned by CoreCivic and is one of the nation's largest private prisoner transportation companies,[31] has its own history of sexual assault and abuse of detainees as well. In 2001, a TransCor driver was convicted of sexually assaulting a female prisoner who he was transporting from Corpus Christi

---

[27] Grassroots Leadership, *The Dirty Thirty: Nothing to Celebrate About 30 Years of Corrections Corporation of America* (2013), https://grassrootsleadership.org/cca-dirty-30#22.
[28] *Id.*; Project on Government Oversight, *Sexual Abuse of Immigrant Detainees in Texas*, https://www.contractormisconduct.org/misconduct/1713.
[29] Grassroots Leadership, *The Dirty Thirty: Nothing to Celebrate About 30 Years of Corrections Corporation of America* (2013), https://grassrootsleadership.org/cca-dirty-30#22.; Emily Kassie, *Sexual Assault Inside ICE Detention: 2 Survivors Tell Their Stories*, The New York Times (July 17, 2018), https://www.nytimes.com/2018/07/17/us/sexual-assault-ice-detention-survivor-stories.html; *see also* ACLU, *ACLU of Texas Today Files Federal Lawsuit on Behalf of Women Assaulted at T. Don Hutto Detention Center* (Oct. 19, 2011), https://www.aclu.org/press-releases/documents-obtained-aclu-show-sexual-abuse-immigration-detainees-widespread-national.
[30] Adrian Mojica, *Former Middle Tennessee Correctional Officer Sues CoreCivic Over Alleged Sexual Harassment* (Feb. 11, 2020) https://fox17.com/news/local/former-middle-tennessee-correctional-officer-sues-corecivic-over-alleged-sexual-harassment; Adam Tamburin, *CoreCivic Guard Reported Sexual Harassment. HR Said 'Boys Will Be Boys,' Lawsuit Says* (Jan. 11, 2019) https://www.tennessean.com/story/news/2019/01/11/corecivic-ignored-prison-guard-reports-inmates-sexual-harassment-lawsuit-chattanooga-tennessee/2546820002/.
[31] TransCor, *Our Story*, https://transcor.com/our-story.

to the Harris County jail.[32] The driver, along with another TransCor employee, assaulted and terrorized the prisoner for six days, vaginally raping her with a flashlight and the barrel of a gun, and forcing her to perform oral sex.[33] In 2002, TransCor settled another lawsuit with a female prisoner who was sexually assaulted by a TransCor guard during a drive from Texas to Colorado.[34] Despite a history of similar incidents, similar lawsuits, and a company policy that required the presence of at least one female guard, TransCor assigned an all-male crew to extradite the female prisoner, subjecting her to sexual assault.[35] And in 2008, a TransCor employee in Florida was charged with two counts of having sex with an inmate in custody after he took two female inmates he was tasked with transporting to a motel room.[36]

54.     CoreCivic and its subsidiaries have extensive rap-sheets for sexual assault and abuse of detainees. Yet, watchdog groups warn that actual occurrences of sexual abuse and harassment are likely significantly higher than those reported by the Department of Homeland Security, ICE, and CoreCivic.[37] This is because rape and sexual abuse tend to be highly underreported in immigration detention facilities due to

---

[32] Carol Christian, *Ex-Driver Gets Prison, Fine in Assault of Inmate*, Houston Chronicle (Oct. 6, 2001), https://www.chron.com/news/houston-texas/article/Ex-driver-gets-prison-fine-in-assault-of-inmate-2023805.php; Matthew T. Clarke, *Sentences Upheld for TransCor Driver Who Raped and Terrorized Prisoners*, Prison Legal News (Jan. 15, 2004), https://www.prisonlegalnews.org/news/2004/jan/15/sentences-upheld-for-transcor-driver-who-raped-and-terrorized-prisoners/.
[33] Christian, *supra* note 35.
[34] ACLU Colorado, *Ex-Prisoner Settles Sexual Assault Suit Against Nation's Largest Private Extradition Company* (April 23, 2002), https://aclu-co.org/ex-prisoner-settles-sexual-assault-suit-against-nations-largest-private-extradition-company/.
[35] *Id.*
[36] *TransCor Rap Sheet*, Private Corrections Working Group  https://www.privateci.org/rap_transcor.html; Lise Fisher, *Police: Man had Sex with Inmates*, The Gainesville Sun (Feb. 5, 2008), https://www.gainesville.com/article/LK/20080205/news/604153905/GS
[37] Emily Kassie, *Sexual Assault Inside ICE Detention: 2 Survivors Tell Their Stories*, The N.Y. Times (July 17, 2018), https://www.nytimes.com/2018/07/17/us/sexual-assault-ice-detention-survivor-stories.html.

many factors, including fears of retaliation, social isolation, language barriers, power dynamics between abusers and detainees, and the persisting reputation that allegations will not be seriously investigated.[38]

55.    ICE and CoreCivic have consistently and repeatedly shown that they are incapable of protecting the basic human rights of the immigrants under their care. In 2009, after an extensive record of abuses and deaths of immigrants in its custody, ICE announced reform plans and promised a "truly civil" immigration detention system.[39] Nonetheless, ICE continued to contract out operation of the detention centers in the immigration system to private prison corporations like CoreCivic, where individuals frequently suffer sexual assault, substandard medical care, lack of due process, and abysmal conditions.[40]

56.    In 2018, the former deputy director of ICE acknowledged that, although the U.S. government's partnership with private prison companies "was supposed to make things much more effective, much more economical," the parties "fell behind" and "fell short" in "the execution and the monitoring and the auditing." He further acknowledged that "[i]t wasn't [private prison companies'] priority to ensure that the highest standards were being met."[41]

---

[38] *See* http://www.endisolation.org/sexual-assault-in-immigration-detention/.
[39] Detention Watch Network, *Houston Processing Center: Expose & Close*, https://www.detentionwatchnetwork.org/sites/default/files/reports/DWN%20Expose%20and%20Close%20Houston.pdf
[40] *Id.*
[41] Clyde Haberman, *For Private Prisons, Detaining Immigrants Is Big Business*, The N.Y. Times (Oct. 1, 2018), https://www.nytimes.com/2018/10/01/us/prisons-immigration-detention.html.

57.     A 2016 U.S. Department of Justice study found that private prisons are 28% more violent than their public counterparts.[42] After years of mounting reports of abuses at privately-run prisons and detention facilities, the Justice Department ordered the Federal Bureau of Prisons to end or reduce reliance on contracts with private prison operators. In the memorandum announcing the order, then-Deputy Attorney General Sally Yates stated that private prisons "compare poorly" to Bureau-run facilities and outlined findings that they "do not maintain the same level of safety and security" and "do not provide the same level of correctional services, programs, and resources."[43]

58.     Around the same time, CoreCivic shed its former name, Corrections Corporation of America, and rebranded itself as "CoreCivic."[44] The change reached no deeper than the name. The company's business model—and its disregard for the welfare of immigrants and detainees—remained untouched.

59.     Meanwhile, the federal government's efforts to reexamine and reduce its reliance on private prison operators were short-lived. On February 23, 2017, then-Attorney General Jeff Sessions rescinded the Justice Department's guidance on contracts with private prison operators.[45] Within a month of President Trump assuming office,

---

[42] U.S. Department of Justice, Office of the Inspector General, *Review of the Federal Bureau of Prisons' Monitoring of Contract Prisons*, at 18 (Aug. 2016), https://oig.justice.gov/reports/2016/e1606.pdf.
[43] Letter from Deputy Attorney General Sally Yates to Acting Director of Federal Bureau of Prisons (Aug. 18, 2016), https://www.justice.gov/archives/opa/file/886311/download.
[44] David Boucher, *CCA Changes Name to CoreCivic Amid Ongoing Scrutiny*, The Tennessean (Oct. 28, 2016), https://www.tennessean.com/story/news/2016/10/28/cca-changes-name-amidongoing-scrutiny/92883274/.
[45] Christopher Dean Hopkins, *Private Prisons Back in Mix for Federal Inmates as Sessions Rescinds Order*, NPR (Feb. 23, 2017), https://www.npr.org/sections/thetwoway/2017/02/23/516916688/private-prisons-back-in-mix-for-federal-inmates-as-sessionsrescinds-order.

CoreCivic's stock price increased by 140 percent, and the stock of CoreCivic's largest competitor, GEO Group, increased by 98 percent.[46]

60.    Immigrant-rights groups and others continued to sound alarms about the conditions for detainees held in immigration detention. In response to these concerns, the Department of Homeland Security Office of Inspector General conducted unannounced inspections of several detention facilities. In a report published December 11, 2017—just a few months before Plaintiff was detained at the Houston Processing Center—the DHS OIG detailed grave concerns about the treatment and care of people detained at immigration detention facilities. The findings were dire and unequivocal: "[W]e identified problems that undermine the protection of detainees' rights, their humane treatment, and the provision of a safe and healthy environment."[47]

## C.    Despite well-documented problems with CoreCivic, ICE contracts with CoreCivic to operate the Houston Processing Center.

61.    While raking in profits, CoreCivic has continued its pattern of negligent and reckless behavior at its detention facilities. The Houston Processing Center,  also known as the Houston Contract Detention Facility, where Plaintiff was detained is no exception. Built in 1984 for the purpose of holding immigrants for ICE, the Houston Processing Center was the first private prison built in the United States.[48] Upon

---

[46] Heather Long, *Private Prison Stocks Up 100% Since Trump's Win*, CNN Business (Feb. 24, 2017), https://money.cnn.com/2017/02/24/investing/private-prison-stocks-soartrump/index.html.
[47] U.S. Department of Homeland Security Office of the Inspector General, *Concerns About ICE Detainee Treatment and Care at Detention Facilities* (Dec. 11, 2017), https://www.oig.dhs.gov/sites/default/files/assets/2017-12/OIG-18-32-Dec17.pdf.
[48] Detention Watch Network, *Houston Processing Center: Expose & Close*, https://www.detentionwatchnetwork.org/sites/default/files/reports/DWN%20Expose%20and%20Close%20Houston.pdf.

information and belief, the Houston Processing Center has been operated by CoreCivic under contract with the United States government and ICE since at least 2003.

62.     The Houston Processing Center holds approximately 1,000 criminal and undocumented adult male and female immigrants for ICE. The facility, which upon information and belief is owned by CoreCivic,[49] comprises 183,000 square feet, with 26 dormitories that each house 20-60 detainees at a time.[50] Together with the Hutto Residential Center in Taylor, Texas (also operated by CoreCivic), and the South Texas Detention Complex in Pearsall, Texas, the Houston Processing Center detained almost 22 percent of the average daily prison population in Texas in 2019.[51]

63.     There were at least eight reported allegations of sexual abuse at the Houston Processing Center just between March 2016 and March 2017.[52] In 2017, there were at least eight allegations of employee on detainee sexual abuse, and another four allegations of detainee on detainee sexual abuse at the facility.[53] And since 2003, the Houston Processing Center has reported at least nine deaths.[54]

---

[49] *Id.*

[50] U.S. Department of Homeland Security, *PREA Audit: Subpart A DHS Immigration Detention Facilities Audit Report* (Mar. 9, 2017), https://www.corecivic.com/hubfs/_files/PREA/Facilities/2017-Houston%20Processing%20Center%20-PREA%20Audit%20Report.pdf.

[51] Detention Watch Network, *Texas Representatives Urge ICE to Suspend 10-Year Detention Contract Solicitation of Three Immigration Jails* (Jan. 13, 2020), https://www.detentionwatchnetwork.org/pressroom/releases/2020/texas-representatives-urge-ice-suspend-10-year-detention-contract.

[52] U.S. Department of Homeland Security, *PREA Audit, supra* note 53.

[53] CoreCivic 2017 PREA Annual Report, at pp. 7-8 (2017) https://www.corecivic.com/hubfs/_files/PREA/2017-PREA%20AnnualReport-FINAL5.pdf.

[54] Detention Watch Network, *More Than 45 Organizations Call for Congress to Investigate ICE's Evasion of Procurement Law* (Dec. 5, 2019), https://www.detentionwatchnetwork.org/pressroom/releases/2019/more-45-organizations-call-congress-investigate-ice-s-evasion-procurement

64.     CIVIC found that of the 76 immigration detention facilities that have reported sexual assault complaints, the Houston Processing Center ranks second for the highest number of sexual assault complaints.[55] Another CoreCivic facility in San Diego ranks fifth.[56] Between October 2012 and March 2016, the Houston Processing Center ranked second in the nation for the highest number of calls to the ICE ERO Detention Reporting and Information Line ("DRIL") related to sexual and/or physical abuse incidents.[57] During that time, the Houston Processing Center had 23 DRIL calls—or about 1 call for every 38 detainees, based on its average population.[58]

65.     Public outcry has not stopped ICE from continuing its relationship with CoreCivic at the Houston Processing Center. In December 2019, forty-five Texas-based nongovernmental organizations petitioned members of Congress to use their oversight authorities to investigate ICE's attempts to evade procurement law and disregard community opposition to contract extensions in Texas for private immigration detention centers, including the Houston Processing Center.[59] A month later, several Texas Representatives sent a letter to the Acting Secretary of the Department of Homeland Security, the Acting Director of ICE, and the Director of the Office of Management Acquisition urging them to immediately suspend solicitation for three ICE detention centers, including the Houston Processing Center, and outlining the ongoing abuse and inadequate medical care at these facilities.[60]

---

[55] CIVIC Complaint, *supra* note 12.
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] Detention Watch Network, *supra* note 57.
[60] *Castro, Doggett, Escobar Demand Answers from ICE on Nefarious Contracts with Three Texas Detention Centers* (Jan. 13, 2020), https://castro.house.gov/media-center/press-releases/castro-doggett-escobar-

66.     Despite the well-documented problems with CoreCivic and the Houston Processing Center—and in the midst of the COVID-19 pandemic—in March 2020, ICE awarded the Houston Processing Center a $50 million contract to keep the for-profit detention center open for the next decade.[61]

**D.     Plaintiff is attacked, raped, and impregnated while detained at the Houston Processing Center.**

67.     Plaintiff Jane Doe is a citizen of Mexico. In 2018, Plaintiff was living undocumented in the State of Texas. In approximately February or March  2018, Plaintiff was taken into ICE custody and detained at the Houston Processing Center, where she would be held for approximately three months before eventually being deported to Mexico on or about June 2, 2018.

68.     While in the Houston Processing Center, Plaintiff was confined to a cell with approximately 20 other female detainees. Along with the other female detainees, Plaintiff was issued a red, two-piece suit, which included a shirt and pants, a bra, and underwear.

69.     Female detainees at the Houston Processing Center were overseen by female guards, and male detainees were held in a separate area of the facility.

---

demand-answers-from-ice-on-nefarious-contracts-with-three-texas-detention-centers-; Letter from Representative Castro et al. to Acting Secretary of the Department of Homeland Security, the Acting Director of ICE, and the Director of the Office of Management Acquisition (Jan. 13, 2020), available at https://castro.house.gov/imo/media/doc/Letter%20on%20ICE%20Procurement%20of%20Tx%20Deten tion%20Facilities%201.13.20.pdf.

[61] Grassroots Leadership, *In the Midst of COVID-19 Pandemic, Business as Usual: ICE Awards a Nearly $50 Million Contract to Keep the Houston Processing Center Open for the Next Decade*, Grassroots Leadership (March 24, 2020),  https://grassrootsleadership.org/releases/2020/03/midst-covid-19-pandemic-business-usual-ice-awards-nearly-50-million-contract-keep; United States General Services Administration, *CoreCivic, Inc. Contract Data*, https://beta.sam.gov/awards/89016447%2BAWARD?keywords=Immigration%20detention&sort=-modifiedDate&index=&is_active=true&page=3&organization_id=100012075

Accordingly, Plaintiff did not usually come into contact with any men except during church services provided by the facility.

70.     Plaintiff was scheduled to be released from the Houston Processing Center to Mexico on or about June 2, 2018. At about 3:00 pm on or about June 1, Plaintiff and two other female detainees were moved from their regular cells to a different cell that was separate from the other cells and located in a different, more isolated area of the facility.

71.     Plaintiff and the two other female detainees were the only people moved to the isolated cell. Plaintiff had never been in this cell before, which seemed older and darker than the rest of the facility and contained one small window and a dim light. The cell did not contain any beds for the women but only small concrete benches and a toilet. There was no phone in the cell, despite the fact that there had usually been a phone available to the cell where Plaintiff had previously been held. Once inside the new cell, the women were not handcuffed. They were not given any food or drink, and the only available water was from a faucet inside the cell.

72.     At around midnight—several hours after Plaintiff and the two other women had been moved to the isolated cell—three men, Defendants Assailant 1, Assailant 2, and Assailant 3, entered the cell. The Assailants did not appear to be wearing uniforms like those Plaintiff had seen other men wearing at the facility. Instead, the men appeared to be wearing jeans and plainclothes, with their faces covered. Although Plaintiff could not see their faces, one of the men was tall and thin, and the other two were shorter.

73.     As the Assailants entered the cell, they put their fingers over their mouths, gesturing for the women to be quiet. The Assailants then moved in on Plaintiff and the other women, who were all seated at the time.

74.     One of the men hit Plaintiff on her face, slapping her and hitting her with his closed fist. He then twisted Plaintiff's hand behind her back. Plaintiff saw that the other two men were doing the same to the other two women in the cell. When one of the women began yelling, one of the men covered her mouth. As the women screamed, the men told the women to "stop" in what Plaintiff perceived to be an American accent.

75.     Plaintiff was lying on her back on the floor. She was terrified and pulled away from the man, trying at first to resist his attack but ultimately stopping because he kept hitting her. The man removed Plaintiff's pants and top and penetrated her vagina with his fingers and then his penis while lying on top of her. The man did not wear a condom, and he ejaculated while his penis was inside of Plaintiff.

76.     The Assailants remained in the isolated cell with the women for approximately one to one and a half hours. After the men had finished assaulting the women, all three left the cell at the same time. As the men exited, the three women were left crying and terrified; they did not sleep the rest of the night.

77.     At around 5:00 am that morning, some men came to the cell to get Plaintiff and the two other women. The men had the women change their clothes inside the cell into a new grey uniform. After they changed, the men took the women's red uniforms and underwear. The women were not permitted to shower.

78.     As a result of the attacks just hours before, Plaintiff had visible bruising and swelling on her face, which was painful. One of the other women had a busted lip.

79.     Shortly after they changed clothes, Plaintiff and the two women were moved from the isolated cell and loaded onto a bus that was crowded with about 20 male detainees and several immigration officers and/or facility employees. The bus took them from the Houston Processing Facility to Laredo, Texas.

80.     The detainees were told they had to be quiet on the bus. One of the men on the bus noticed that the women's faces were injured. The man asked one of the women what happened to her face, but she did not respond because the agents had yelled at everyone to remain quiet.

81.     When the bus arrived in Laredo, Plaintiff and the two women were taken to Mexican immigration and then into Mexico. Once in Mexico, Plaintiff was taken to a nonprofit organization that provides assistance to immigrants. The other two women with Plaintiff had some money and were able to get bus tickets to leave. However, Plaintiff did not have any money and no way to get a bus ticket herself.

82.     Plaintiff stayed at the nonprofit organization for several days, from approximately June 2, 2018 to June 10, 2018. There was no doctor on site, but Plaintiff was given some ointment for her face, which remained visibly bruised and swollen for several days.

83.     Through the assistance of the nonprofit, Plaintiff eventually was able to obtain a bus ticket to travel her hometown in rural Mexico.

84.     After arriving in Mexico, Plaintiff did not have her menstrual period in June 2018 and then began to experience nausea and vomiting. Plaintiff realized she was likely pregnant as a result of the rape at the Houston Processing Center. At the time she was raped, Plaintiff had not had sexual intercourse in approximately two years. And Plaintiff did not have sexual intercourse with anyone between the time of the rape and the birth of her daughter in 2019.

85.     When Plaintiff told her family what had happened to her and that she was pregnant, they were very sad and angry. Plaintiff felt very depressed and alone as a result of the trauma of the attack and subsequent pregnancy. Plaintiff did not sleep well, and at points during her pregnancy, she felt so hopeless that she did not want to live.

86.     In early 2019, Plaintiff gave birth to a baby girl in Mexican where Plaintiff's family lived. The baby was born via cesarean section, and Plaintiff suffered serious medical complications during the birth, leading to a substantial loss of blood and an approximately eight-day hospitalization.

87.     The baby's complexion is much lighter than Plaintiff's and that of her other children. The child's eyes, which have an almond-like shape, are visibly different than Plaintiff's eyes and her other children's eyes.

88.     As a result of the attack and sexual assault endured by Plaintiff at the Houston Processing Center, Plaintiff suffered severe discomfort and pain. She suffered and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

fright, grief, humiliation, and loss of enjoyment of life. Plaintiff was prevented and will continue to be prevented from performing daily activities and obtaining full enjoyment of life. She has suffered disfigurement, physical impairment, loss of earnings and earning capacity in the past and future, and has incurred medical expenses in the past and will incur additional medical expenses in the future as needed to seek treatment and therapy to heal from the physical, mental, and emotional trauma she has suffered.

## VII.    CAUSES OF ACTION

### COUNT 1: NEGLIGENCE
*Against: CoreCivic Defendants, Defendant Lacy, & Defendant Price*

89.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

90.    Defendants, CoreCivic Defendants, Lacy, and Price owed a legal duty to protect Plaintiff from injury and harm while Plaintiff was in their custody and control.

91.    Defendants, CoreCivic Defendants, Lacy, and Price failed to prevent and detect sexually and physically abusive behavior against Plaintiff.

92.    At all times relevant, Defendants, CoreCivic Defendants, Lacy, and Price knew or should have known of the risks of male detainees, visitors, trespassers, agents, officers, subcontractors, employees, agents, and/or servants being permitted to access or isolate female detainees within the Houston Processing Center so as to facilitate sexual assaults of detainees, including Plaintiff, yet failed to take proper steps to protect the inmates.

93.    Defendants, CoreCivic Defendants, Lacy, and Price and their employees, agents, or servants owed duties to Plaintiff to exercise the requisite standard of care and

skill ordinarily exercised by similar detention facilities, institutions, agencies, agents, guards, correctional officers, and staff members to detect, deter, and prevent sexual assault and abuse, and to take reasonable care to control those in their employ.

94.     Defendants, CoreCivic Defendants, Lacy, and Price and their employees, agents, or servants were negligent in the hiring, supervision, and retention of the Assailant Defendants and any employees, agents, or servants who were responsible for protecting Plaintiff and preventing her from being injured or harmed while in their custody and control.

95.     Defendants, CoreCivic Defendants, Lacy, and Price failed to have sufficient policies, practices, and/or oversight in place to detect and prevent physical and sexual abuse of immigration detainees.

96.     Defendants, CoreCivic Defendants, Lacy, and Price failed to develop meaningful guidelines or oversight mechanisms, provide adequate training, or otherwise ensure accountability for its agents, officers, staff, employees, and/or subcontractors to ensure the safety of female detainees.

97.     Defendants, CoreCivic Defendants, Lacy, and Price maintained a practice and/or custom of allowing male agents, officers, staff, employees, subcontractors, and/or visitors to interact with, move, transport, and/or be alone with female individuals within the Houston Processing Center.

98.     Defendants, CoreCivic Defendants, Lacy, and Price repeatedly violated the applicable contracts, policies, and standards designed to prevent physical and sexual assaults like that which Plaintiff suffered.

99.     Defendants, CoreCivic Defendants, Lacy, and Price and their employees, agents, or servants owed duties to Plaintiff to provide adequate medical and mental health care while she was in their custody and control.

100.    By failing to prevent sexually abusive behavior and assaults, Defendants, CoreCivic Defendants, Lacy, and Price and their employees, agents, or servants acting in the course and scope of their employment, each breached their duties of reasonable care to control those in their employ and/or control and to protect those in their custody, including Plaintiff.

101.    By failing to provide Plaintiff with medical and mental health treatment after she was assaulted, Defendants, CoreCivic Defendants, Lacy, and Price and their employees, agents, or servants acting in the course and scope of their employment, each breached their duties of reasonable care to Plaintiff.

102.    Upon information and belief, one or more of the Assailant Defendants were employees, agents, and/or servants of Defendants, CoreCivic Defendants, Lacy, and Price, or were under their control or active supervision at all relevant times alleged above. At all times relevant, those Assailant Defendants were acting in the course and scope of their employment, agency, or representation with the Defendants. Defendants, CoreCivic Defendants, Lacy, and Price are liable for the acts or omissions of the Assailant Defendants.

103.    Defendants, CoreCivic Defendants, Lacy, and Price are liable for and the acts or omissions of their employees, agents, servants, and/or subcontractors acting in the course and scope of their employment.

104.     Defendants' breaches of duty proximately caused Plaintiff's injuries. As a direct and proximate result of Defendants' and their subcontractors', employees', agents', and servants' negligent acts and omissions, Plaintiff has suffered, and continues to suffer, severe and permanent injuries, including mental anguish, embarrassment, humiliation, distress, and damages in an amount to be proven at trial.

**COUNT 2: NEGLIGENT SUPERVISION**
*Against: CoreCivic Defendants, Defendant Lacy, & Defendant Price*

105.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

106.     As detailed throughout this Complaint, the CoreCivic Defendants, Defendant Lacy, and Defendant Price owed a duty to Plaintiff to protect her from physical and sexual assault during detention at and release and/or transport from the Houston Processing Center.

107.     Defendants, CoreCivic, Lacy, and Price owed a duty to Plaintiff to ensure implementation of and adherence to the applicable contracts, policies, and standards designed to prevent sexual assault on Plaintiff.

108.     At all times relevant, Defendants, CoreCivic, Lacy, and Price knew or should have known of the risks of male detainees, visitors, trespassers, agents, officers, employees, agents, servants, and/or subcontractors being permitted to access or isolate female detainees within the Houston Processing Center so as to facilitate sexual assaults of detainees, including Plaintiff, yet failed to take proper steps to protect the inmates.

109.     Defendants breached their duty by failing to appropriately supervise male officers, staff, agents, employees, servants, and subcontractors, including but not

limited to the Assailant Defendants and/or others who responsible for guarding, escorting, transporting, supervising, or protecting Plaintiff.

110. Defendants further breached their duty by failing to appropriately supervise visitors, subcontractors, and/or other persons within the Houston Processing Center.

111. Defendants repeatedly violated the applicable contracts, policies, and standards designed to prevent physical and sexual assaults like that which Plaintiff suffered. Defendants further failed to implement and adhere to applicable contracts, policies, and standards designed to prevent sexual assault on Plaintiff.

112. Defendants' breaches of duty proximately caused Plaintiff's injuries. As a direct and proximate result of the breach of this duty by the CoreCivic Defendants, Defendant Lacy, and Defendant Price, Plaintiff has suffered, and continues to suffer, severe and permanent injuries, including mental anguish, embarrassment, humiliation, distress, and damages in an amount to be proven at trial.

### COUNT 3: NEGLIGENT HIRING & NEGLIGENT RETENTION
### *Against: CoreCivic Defendants, Defendant Lacy, & Defendant Price*

113. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

114. The CoreCivic Defendants, Defendant Lacy, and Defendant Price negligently hired, supervised, trained, and/or retained their employees, agents, servants, and/or subcontractors at the Houston Processing Center.

115. At all times relevant, Defendants, CoreCivic Defendants, Lacy, and Price knew or should have known of the risks of male detainees, visitors, trespassers, agents,

officers, employees, agents, subcontractors, and/or servants being permitted to access or isolate female detainees within the Houston Processing Center so as to facilitate sexual assaults of detainees, including Plaintiff, yet failed to take proper steps to protect the inmates.

116.     At all times relevant Defendants, CoreCivic Defendants, Lacy, and Price knew or should have known that failing to act as an ordinarily prudent employer with regard to hiring, supervising, training, and/or retaining employees, agents, servants, and subcontractors posed an unreasonable risk of serious injury or death to female detainees within the Houston Processing Center.

117.     Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff, who was in their custody and control and confined to their facility against her will, a duty of care to hire, supervise, train, or retain competent employees, agents, servants, and/or subcontractors.

118.     Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff a duty of care to hire a sufficient number of employees, agents, servants, and/or subcontractors necessary to protect the vulnerable detainee population within the Houston Processing Center, including Plaintiff.

119.     Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff a duty of care to conduct reasonable background checks and investigation into prospective and current employees, agents, servants, and/or subcontractors.

120.    Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff a duty of care to adequately and sufficiently train their employees, agents, servants, and/or subcontractors.

121.    Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff a duty of care to not retain employees, agents, servants, and/or subcontractors who violate policies designed to protect detainees from physical or sexual assault and/or who are unfit or unable to enforce such policies.

122.    Defendants, CoreCivic Defendants, Lacy, and Price breached their duties to Plaintiff by failing to hire, supervise, train, or retain competent employees, agents, servants, and/or subcontractors. Defendants failed conduct reasonable background checks and investigation into prospective and current employees, agents, servants, and/or subcontractors. Defendants to adequately and sufficiently train their employees, agents, and/or servants. Defendants further breached their duty by retaining employees, agents, servants, and/or subcontractors who violate policies designed to protect detainees from physical or sexual assault and/or who are unfit or unable to enforce such policies.

123.    Defendants' breaches of duty proximately caused Plaintiff's injuries. As a direct and proximate result of Defendants' acts or omissions, Plaintiff has suffered, and continues to suffer, severe and permanent injuries, including mental anguish, embarrassment, humiliation, distress, and damages in an amount to be proven at trial.

### COUNT 4: PREMISES LIABILITY
*Against: CoreCivic Defendants, Defendant Lacy, & Defendant Price*

124.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

125.     Upon information and belief and at all times relevant, one or more of the CoreCivic Defendants is the premises owner, occupier, and/or operator of the Houston Processing Center.

126.     At all times relevant, one or more of the CoreCivic Defendants, Defendant Lacy, and Defendant Price controlled the premises of the Houston Processing Center.

127.     Plaintiff was detained on the CoreCivic Defendants' property against her will and under Defendants' custody, control, and care.

128.     Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff a duty to keep the premises of the Houston Processing Center in a safe condition for Plaintiff, who was confined there against her will.

129.     Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff a duty to inspect the premises to discover latent defects or other dangerous conditions.

130.     Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff a duty to make the premises safe, including controlling access to female detainees and installing and maintaining adequate and functioning safety measures such as locks and video surveillance.

131.     Defendants, CoreCivic Defendants, Lacy, and Price owed Plaintiff a duty to maintain proper security and lookout of the premises, particularly of areas that are isolated, dark, or remote.

132.     The condition of the CoreCivic Defendants' premises posed an unreasonable risk of harm to Plaintiff. The condition of the premises and, specifically, the location and condition of the isolated area where Plaintiff was held at the time of the assault at issue posed an unreasonable risk of harm that persons could access or isolate female detainees within the Houston Processing Center so as to facilitate physical and sexual assaults of detainees, including Plaintiff.

133.     Defendants knew or should have known of this unreasonable risk of harm. As set forth in this Complaint, the Defendants, CoreCivic Defendants, Lacy, and Price were aware of a clear history of sexual abuse and assault of detainees in CoreCivic facilities and ICE detention centers, and particularly, of a clear history of sexual abuse and assault within the Houston Processing Center.

134.     Defendants, CoreCivic Defendants, Lacy, and Price breached their duties to Plaintiff by failing to keep the premises in a safe condition, failing to inspect the premises to discover latent defects or other dangerous conditions, failing to make the premises safe, failing to properly control access to female detainees like Plaintiff on the premises, failing to install and maintain sufficient safety measures and devices, failing to maintain proper security and lookout, and allowing Plaintiff to be isolated in a remote area of the premises where she was vulnerable to physical and sexual assault.

135.     As a direct and proximate result of Defendants' breach of their duties, Plaintiff suffered substantial injuries and damages when three men were able to enter the isolated cell where Plaintiff was being held and to physically and sexually assault her.  Defendants' breaches of duty proximately caused Plaintiff's injuries. As a direct

and proximate result of Defendants' acts or omissions, Plaintiff has suffered, and continues to suffer, severe and permanent injuries, including mental anguish, embarrassment, humiliation, distress, and damages in an amount to be proven at trial.

### COUNT 5: VICARIOUS LIABILITY
*Against CoreCivic Defendants, Defendant Lacy, & Defendant Price*

136.     Plaintiff realleges and incorporates by reference all the allegations contained in the previous paragraphs.

137.     Vicarious liability imposes liability for one person's fault may be imputed to another because of the relationship between them. Under the doctrine of vicarious liability, an employer or master is responsible for the acts or omissions of its employees, agents, or servants. Vicarious liability creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

138.     Upon information and belief, one or more of the Assailant Defendants were employees, agents, and/or servants of the CoreCivic Defendants or was under their control or active supervision at all relevant times alleged above. At all times relevant, the Assailant Defendants were acting in the course and scope of their employment, agency, or representation with the CoreCivic Defendants.

139.     Additionally, upon information and belief, other employees, agents, servants, and/or subcontractors of the CoreCivic Defendants or those who were under the CoreCivic Defendants' control or active supervision at all relevant times alleged above, including but not limited to Defendants Lacy and Price, perpetrated, allowed, or failed to prevent the incident that forms the basis this lawsuit. At all times relevant,

these employees, agents, servants, and/or subcontractors were acting in the course and scope of their employment, agency, or representation with the CoreCivic Defendants.

140.    The CoreCivic Defendants are vicariously liable for the actions of the Assailant Defendants as described above, as well as the actions or omissions of their employees, agents, servants, and/or subcontractors who perpetrated, allowed, or failed to prevent the attack and sexual assault of Plaintiff.  These actions or omissions were performed in the course and scope of the Assailant Defendants' and other employees', agents', or servants' employment or agency with the CoreCivic Defendants.

141.    The CoreCivic Defendants and Defendants Lacy and Price are further liable to Plaintiff because they sanctioned, directed, or actively participated in the commission of the wrongful conduct which injured Plaintiff.

142.    As a direct and proximate cause of the actions or omissions carried out by the CoreCivic Defendants' employees, agents, and/or servants in the course and scope of their employment, agency, and/or representation with the CoreCivic Defendants, Plaintiff has suffered, and continues to suffer, severe and permanent injuries, including mental anguish, embarrassment, humiliation, distress, and damages in an amount to be proven at trial.

### COUNT 6: GROSS NEGLIGENCE
*Against CoreCivic Defendants, Defendant Lacy, & Defendant Price*

143.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

144.    Plaintiff's injuries resulted from the gross negligence, malice, and/or fraud of the CoreCivic Defendants, Defendant Lacy, and Defendant Price, which

entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code §
41.003(a).

145.    Defendants' acts or omissions were grossly negligent. As set forth herein,
Defendants owed a duty to Plaintiff to ensure implementation of and adherence to the
applicable contracts, policies, and standards designed to prevent sexual assault on
Plaintiff. Defendants owed a duty to Plaintiff to protect her and prevent her from being
harmed while she was in their custody, care, and control. Defendants owed a duty to
sufficiently hire, train, supervise, and retain staff to protect Plaintiff and prevent
physical and sexual abuse. The CoreCivic Defendants owed Plaintiff a duty to keep the
premises of the Houston Processing Center in a safe condition for Plaintiff, to inspect
the premises to discover latent defects or other dangerous conditions, to make the
premises safe, including controlling access to female detainees and installing and
maintaining adequate and functioning safety measures, and to maintain proper security
and lookout of the premises.

146.    As detailed throughout this Complaint, Defendants breached these duties
to Plaintiff.

147.    Each of Defendants' acts or omissions, when viewed objectively from the
standpoint of the actor at the time of these breaches of duties, involved an extreme
degree of risk, considering the probability and magnitude of the potential harm to
Plaintiff and the other detainee women at the Houston Processing Center. There was an
extreme degree of risk and a high likelihood of serious injury to Plaintiff and the other
two women when they were permitted to be isolated overnight away from the general

female detainee population at the Houston Processing Center, leaving them vulnerable to assault, injury, and death. There was history of sexual abuse and assault of detainees in CoreCivic facilities and ICE detention centers, and particularly, of a clear history of sexual abuse and assault within the Houston Processing Center.

148.    At the time of these breaches of duties, Defendants had actual, subjective awareness of the extreme risks involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff and the other women who were placed with her in the isolated cell. Defendants were aware of a clear history of sexual abuse and assault of detainees in CoreCivic facilities and ICE detention centers, and particularly, of a clear history of sexual abuse and assault within the Houston Processing Center.

149.    Furthermore, the CoreCivic Defendants, Lacy, and Price are liable for punitive damages for the criminal acts or omissions committed by their employees because, upon information and belief, Defendants authorized the acts of one or more of the Assailants; Defendants acted with malice in hiring the one or more of the Assailants, who were unfit employees; one or more of the Assailants was an employee of the CoreCivic Defendants, Lacy, or Price, and was acting as a manager in the course and scope of his employment at the time of the incident; and/or Defendants approved of or ratified the actions of the Assailant Defendants. Tex. Civ. Prac. & Rem. Code § 41.005(b).

### COUNT 7: ASSAULT & BATTERY
*Against: Defendants Assailant 1, Assailant 2, and Assailant 3*

150.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

151.     Defendants Assailant 1, Assailant 2, and Assailant 3 intentionally, knowingly, or recklessly made a harmful and/or offensive contact with Plaintiff's person.  The Assailant Defendants entered the isolated cell where Plaintiff and the other two women were being held with specific the intent to physically and sexually assault the women and/or to cause a reasonable apprehension of immediate bodily harm.

152.     The Assailant Defendants intentionally, knowingly, or recklessly physically attacked Plaintiff and touched her person in a sexual manner, where Plaintiff did not consent to the sexual touching. The Assailant Defendants intentionally, knowingly, or recklessly hit, punched, and slapped Plaintiff repeatedly, forcibly held her arm behind her back, and vaginally raped her with their hands and penis.

153.     Further, the Assailant Defendants intentionally, knowingly, or recklessly caused a reasonable apprehension of immediate bodily harm to Plaintiff.

154.     The Assailant Defendants' contact was harmful and offensive and caused bodily injury to Plaintiff. The Assailant Defendants knew or reasonably should have known that their contact with Plaintiff's body was harmful and offensive.

155.     The Assailant Defendants' conduct further constitutes sexual assault and aggravated sexual assault as defined under Texas Penal Code § 22.011 and § 22.021. The Assailant Defendants intentionally or knowingly caused the penetration of Plaintiff's sexual organ by another person without Plaintiff's consent, and/or caused the sexual organ of Plaintiff to contact the sexual organ of another person. *See* Tex. Penal Code § 22.011. The Assailant Defendants further caused serious bodily injury or attempted to cause Plaintiff to die in the course of the sexual assault, and/or by words or actions

placed Plaintiff in fear that death, serious bodily injury, or kidnapping would be imminently inflicted on any person, including but not limited to Plaintiff and/or the other women in the cell with Plaintiff. *See* Tex. Penal Code § 22.021.

156.     As a direct and proximate result of the Assailant Defendants' conduct, Plaintiff suffered substantial injuries and damages, including severe physical pain, mental anguish, distress, anxiety, embarrassment, fright, loss of self-esteem, grief, humiliation, and loss of enjoyment of life.

### COUNT 8: FALSE IMPRISONMENT
*Against: Defendants Assailant 1, Assailant 2, and Assailant 3*

157.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

158.     As detailed throughout this Complaint, Defendants Assailant 1, Assailant 2, and Assailant 3 falsely imprisoned Plaintiff by willfully detaining her without her consent and in the absence of any legal authority or justification for doing so, by moving Plaintiff to the isolated cell and/or holding Plaintiff in the isolated cell to facilitate their physical and sexual assaults on Plaintiff and the other two women with her.

159.     Plaintiff knew that she was willfully and unlawfully detained by Defendants at the time their physical and sexual assaults upon her, and she did not consent to it.

160.     Defendants' willful detention of Plaintiff was without legal authority or justification.

161.     As a direct and proximate result of the Assailant Defendants' conduct, Plaintiff suffered substantial injuries and damages, including severe physical pain, mental anguish, distress, anxiety, embarrassment, fright, loss of self-esteem, grief, humiliation, and loss of enjoyment of life.

162.     Defendants engaged in this conduct with malice and reckless or callous indifference to the rights of Plaintiff.

### COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*Against: Defendants Assailant 1, Assailant 2, and Assailant 3*

163.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

164.     Plaintiff's injuries were a direct and/or proximate result of Defendants Assailant 1's, Assailant 2's, and Assailant 3's intentional infliction of emotional distress.

165.     The Assailant Defendants acted intentionally or recklessly and inflicted emotional distress on Plaintiff.

166.     The Assailant Defendants brutally attacked and sexually assaulted Plaintiff and two other women, in the dark, with their faces covered, while the women were being held in an isolated cell in an immigration detention center.

167.     The Assailant Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

168.     The emotional distress suffered by Plaintiff as a result of the Assailant Defendants attacking and sexually assaulting Plaintiff and two other women in her presence was severe.

169.    The Assailant Defendants' conduct proximately caused Plaintiff's emotional distress. As a direct and proximate result of the Assailant Defendants' conduct, Plaintiff suffered substantial injuries and damages, including severe physical pain, mental and emotional anguish, distress, anxiety, embarrassment, fright, loss of self-esteem, grief, humiliation, and loss of enjoyment of life.

170.    Defendants engaged in this conduct with malice and reckless or callous indifference to the rights of Plaintiff

### COUNT 10: MALICE AND GROSS NEGLIGENCE
*Against: Defendants Assailant 1, Assailant 2, and Assailant 3*

171.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

172.    Plaintiff's injuries resulted from the gross negligence, malice, or fraud of the Assailant Defendants, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

173.    Each of the Assailant Defendants' acts or omissions were made with malice because each of the Defendants had a specific intent to cause substantial injury or harm to Plaintiff. Each of the Assailant Defendants entered the isolated cell where Plaintiff and the other two women were being held with specific the intent of sexually and physically assaulting them and causing substantial injury or harm to Plaintiff. The acts or omissions of each of the Assailant Defendants were outrageous, malicious, and/or otherwise reprehensible.

174.    The Assailant Defendant's acts or omissions were grossly negligent. Each of the Assailant Defendants' acts or omissions, when viewed objectively from their

standpoint at the time of the assault involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff and the other women in the cell. There was an extreme degree of risk and a high likelihood of serious injury to Plaintiff when each of the Assailant Defendants entered the isolated cell where Plaintiff and the other two women were being held with the intent of assaulting them. Each of the Assailant Defendants had actual, subjective awareness of this risk but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff and the other women in the cell anyway.

### COUNT 11: FEDERAL TORT CLAIMS ACT – NEGLIGENCE
*Against: Defendant United States*

175.   Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

176.   All conditions precedent to bring suit against the United States under the Federal Tort Claims Act have occurred or been performed.

177.   The United States has waived its sovereign immunity pursuant to 28 U.S.C. §§ 1346(b) and 2674.  As set forth in this Complaint, Plaintiff suffered personal injury and incurred damages proximately caused by the negligent or wrongful acts or omissions of employees, agents, and/or servants of the United States government, including but not limited to employees, agents, and/or servants of the United States Immigration and Customs Enforcement agency, the Department of Homeland Security, and/or the CoreCivic Defendants. These employees and agents were acting in the course and scope of their employment or agency with the United States government when they committed acts or omissions that perpetrated, allowed, and/or failed to

prevent the attack and sexual assault of Plaintiff while she was in the custody, care, and control of the United States government and the CoreCivic Defendants at the Houston Processing Center. At all times relevant, these employees, agents, and/or servants constituted investigative or law enforcement officers. The United States government, if it were an individual person, would be liable to Plaintiff under the law of the state of Texas for these acts and omissions as set forth herein.

178.    Defendant United States failed to prevent and detect sexually and physically abusive behavior against Plaintiff.

179.    At all times relevant, Defendant United States knew or should have known of the risks of male detainees, visitors, trespassers, agents, officers, employees, agents, and/or servants being permitted to access or isolate female detainees within the Houston Processing Center so as to facilitate sexual assaults of detainees, including Plaintiff, yet failed to take proper steps to protect the inmates.

180.    Defendant United States and its agencies, employees, agents, or servants owed duties to Plaintiff to exercise the requisite standard of care and skill ordinarily exercised by similar detention facilities, institutions, agencies, guards, correctional officers, and staff members to detect, deter, and prevent sexual assault and abuse, and to take reasonable care to control those in their employ.

181.    Defendant United States and its agencies, employees, agents, or servants were negligent in the hiring, supervision, and retention of the Assailant Defendants and any employees, agents, or servants who were responsible for protecting Plaintiff and

preventing her from being injured or harmed while in the custody and control of the United States.

182.     Defendant United States, the Department of Homeland Security, and ICE failed to have sufficient policies, practices, and/or oversight in place to detect and prevent physical and sexual abuse of immigration detainees.

183.     Defendant United States, the Department of Homeland Security, and ICE failed to develop meaningful guidelines or oversight mechanisms, provide adequate training, or otherwise ensure accountability for its male agents, officers, staff, employees, and/or visitors to ensure the safety of female detainees.

184.     Defendant United States, the Department of Homeland Security, and ICE maintained a practice and/or custom of allowing male agents, officers, staff, employees, and/or visitors to interact with, move, transport, and be alone with female individuals within the Houston Processing Center.

185.     Defendant United States and its agencies, employees, agents, or servants owed duties to Plaintiff to provide adequate medical and mental health care while she was in ICE's custody and control.

186.     By failing to prevent sexually abusive behavior and assaults, Defendant United States, the Department of Homeland Security, ICE, and its employees, agents, or servants acting in the course and scope of their employment, each breached their duties of reasonable care to control those in their employ and/or control, and to protect those in their custody, including Plaintiff.

187.    By failing to provide Plaintiff with medical and mental health treatment after she was assaulted, Defendant United States, the Department of Homeland Security, ICE, and its employees, agents, or servants acting in the course and scope of their employment, each breached their duties of reasonable care to Plaintiff.

188.    Defendant United States, the Department of Homeland Security, and ICE are liable for the acts or omissions of the Assailant Defendants and the acts or omissions of its employees, agents, or servants acting in the course and scope of their employment with the United States.

189.    Upon information and belief, one or more of the Assailant Defendants were employees, agents, and/or servants of the United States or was under its control or active supervision at all relevant times alleged above. At all times relevant, the Assailant Defendants were acting in the course and scope of their employment, agency, or representation with the United States. Further, at all times relevant, Defendant United States' employees, agents, or servants within the Houston Processing Center were acting as investigative or law enforcement officers.

190.    As a direct and proximate result of Defendant United States' and its employees', agents', and servants' negligent acts and omissions, Plaintiff has suffered, and continues to suffer, severe and permanent injuries, including mental anguish, embarrassment, humiliation, distress, and damages in an amount to be proven at trial.

### COUNT 12: FEDERAL TORT CLAIMS ACT – ASSAULT & BATTERY
*Against: Defendant United States*

191.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

192.    As set forth in this Complaint, the United States has waived its sovereign immunity pursuant to 28 U.S.C. §§ 1346(b) and 2674.

193.    Upon information and belief, one or more of the Assailant Defendants were employees, agents, and/or servants of the United States or was under its control or active supervision at all relevant times alleged above. At all times relevant, the Assailant Defendants were acting in the course and scope of their employment, agency, or representation with the United States.

194.    At all times relevant, Defendant United States' employees, agents, or servants within the Houston Processing Center were acting as investigative or law enforcement officers.

195.    Assailant 1, Assailant 2, and Assailant 3 intentionally, knowingly, or recklessly made a harmful and/or offensive contact with Plaintiff's person.  The Assailant Defendants entered the isolated cell where Plaintiff and the other two women were being held with specific the intent to physically and sexually assault the women and/or to cause a reasonable apprehension of immediate bodily harm.

196.    The Assailant Defendants intentionally, knowingly, or recklessly physically attacked Plaintiff and touched her person in a sexual manner, where Plaintiff did not consent to the sexual touching. The Assailant Defendants intentionally, knowingly, or recklessly hit, punched, and slapped Plaintiff repeatedly, forcibly held her arm behind her back, and vaginally raped her with their hands and penis.

197.    Further, the Assailant Defendants intentionally, knowingly, or recklessly caused a reasonable apprehension of immediate bodily harm to Plaintiff.

198.     The Assailant Defendants' contact was harmful and offensive and caused bodily injury to Plaintiff. The Assailant Defendants knew or reasonably should have known that their contact with Plaintiff's body was harmful and offensive.

199.     As a direct and proximate result of the Assailant Defendants' conduct, Plaintiff suffered substantial injuries and damages, including severe physical pain, mental anguish, distress, anxiety, embarrassment, fright, loss of self-esteem, grief, humiliation, and loss of enjoyment of life.

### COUNT 13: FEDERAL TORT CLAIMS ACT – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### *Against: Defendant United States*

200.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

201.     As set forth in this Complaint, the United States has waived its sovereign immunity pursuant to 28 U.S.C. §§ 1346(b) and 2674.

202.     Upon information and belief, one or more of the Assailant Defendants were employees, agents, and/or servants of the United States or was under its control or active supervision at all relevant times alleged above. At all times relevant, the Assailant Defendants were acting in the course and scope of their employment, agency, or representation with the United States.

203.     At all times relevant, Defendant United States' employees, agents, or servants within the Houston Processing Center were acting as investigative or law enforcement officers.

204.     Plaintiff's injuries were a direct and/or proximate result of Defendants Assailant 1's, Assailant 2's, and Assailant 3's intentional infliction of emotional distress.

205.     The Assailant Defendants acted intentionally or recklessly and inflicted emotional distress on Plaintiff.

206.     The Assailant Defendants brutally attacked and sexually assaulted Plaintiff and two other women, in the dark, with their faces covered, while the women were being held in an isolated cell in an immigration detention center.

207.     The Assailant Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.

208.     The emotional distress suffered by Plaintiff as a result of the Assailant Defendants attacking and sexually assaulting Plaintiff and two other women in her presence was severe.

209.     The Assailant Defendants' conduct proximately caused Plaintiff's emotional distress. As a direct and proximate result of the Assailant Defendants' conduct, Plaintiff suffered substantial injuries and damages, including severe physical pain, mental and emotional anguish, distress, anxiety, embarrassment, fright, loss of self-esteem, grief, humiliation, and loss of enjoyment of life.

### COUNT 14: FEDERAL TORT CLAIMS ACT – FALSE IMPRISONMENT
#### *Against: Defendant United States*

210.     Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

211.    As set forth in this Complaint, the United States has waived its sovereign immunity pursuant to 28 U.S.C. §§ 1346(b) and 2674.

212.    Upon information and belief, one or more of the Assailant Defendants were employees, agents, and/or servants of the United States or was under its control or active supervision at all relevant times alleged above. At all times relevant, the Assailant Defendants were acting in the course and scope of their employment, agency, or representation with the United States.

213.    At all times relevant, Defendant United States' employees, agents, or servants within the Houston Processing Center were acting as investigative or law enforcement officers.

214.    As detailed throughout this Complaint, Assailant 1, Assailant 2, and Assailant 3 falsely imprisoned Plaintiff by willfully detaining her without her consent and in the absence of any legal authority or justification for doing so, by moving Plaintiff to the isolated cell and/or holding Plaintiff in the isolated cell to facilitate their physical and sexual assaults on Plaintiff and the other two women with her.

215.    Plaintiff knew that she was willfully and unlawfully detained by the Assailant Defendants at the time their physical and sexual assaults upon her, and she did not consent to it.

216.    The Assailant Defendants' willful detention of Plaintiff was without legal authority or justification.

217.    As a direct and proximate result of the Assailant Defendants' conduct, Plaintiff suffered substantial injuries and damages, including severe physical pain,

mental anguish, distress, anxiety, embarrassment, fright, loss of self-esteem, grief, humiliation, and loss of enjoyment of life.

## VIII.   DAMAGES

218.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

219.    In whole or in part, as a result of some or all of the above actions or omissions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of these violations.

220.    As a direct and/or proximate result of Defendants' actions and/or omissions, stated above, Plaintiff suffered discomfort and continues to suffer pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining full enjoyment of life, disfigurement, physical impairment, loss of earnings and earning capacity in the past and future, and has incurred medical expenses in the past and will incur additional medical expenses in the future. Plaintiff will require treatment, therapy, counseling, and/or hospitalization to address the mental anguish and despair caused by Defendants' actions or omissions.

221.    As a direct and/or proximate result of Defendants' acts and omissions, Plaintiff suffered the following injuries and damages.

(a)    Physical pain and suffering in the past and future;

(b)    Mental anguish in the past and future;

(c)    Medical expenses in the past and future;

(d)     Disfigurement in the past and future;

(e)     Physical impairment in the past and future;

(f)     Lost earnings in the past and future;

(g)     Loss of earning capacity in the past and future.

222.    The conduct, actions, and/or omissions of Defendants as alleged in the above stated counts and causes of action constitute violations of the common and/or statutory laws of the State of Texas, and the United States District Court has jurisdiction to hear and adjudicate these claims.

## IX.     EXEMPLARY DAMAGES

223.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

224.    Plaintiff is entitled to exemplary or punitive damages from Defendants CoreCivic, Inc., CoreCivic of Tennessee, LLC, CoreCivic TRS, LLC,  CoreCivic, LLC, Prison Realty Management, LLC, TransCor America, LLC, Trinity Services Group, Inc. a/k/a Trinity Corrections Services, Inc., Robert Lacy, Jr., David Price, Assailant 1, Assailant 2, and/or Assailant 3, because Plaintiff's injuries resulted from these Defendants' gross negligence, malice, and/or fraud as set forth herein. *See* Tex. Civ. Prac. & Rem. Code § 41.003.

## X.     JURY TRIAL DEMANDED

225.    Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues so triable.

## XI.   PRAYER

WHEREFORE, Plaintiff requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

(a)   Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to pain and suffering, medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiff's Federal and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

(b)   Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

(c)   Reasonable attorney fees, pre-judgment and post-judgment interest, and costs; and

(d)   Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and

measures of accountability to ensure the safety and protection of women and other individuals within the United States immigration system, as appears to be reasonable and just.

Dated: May 27, 2020

Respectfully submitted,

By:      */s/ Michelle Simpson Tuegel*

**Michelle Simpson Tuegel** *(attorney in charge)*
TX Bar No. 24075187
Southern District of TX Bar No. 2255288
THE SIMPSON TUEGEL LAW FIRM
3301 Elm St.
Dallas, Texas 75226
214-774-9121 (P)
214-614-9218 (F)
michelle@stfirm.com

And

**Jose Sanchez**
TX Bar No. 24033037
Southern District of TX Bar No. 3392404
JOSE SANCHEZ LAW FIRM, PC
507 N. Green Street
Longview, Texas 75601
903-758-8700 (P)
903-758-8712 (F)
jose@attorneysanchez.com

And

**Morgan A. McPheeters**
TX Bar No. 24081279
*Pro Hac Vice Admission Pending*
MCPHEETERS LAW, PLLC
4447 N. Central Expy., Ste. 101 #158
Dallas, Texas 75205
469-862-8233 (P)
morgan@mcpheeterslaw.com

ATTORNEYS FOR PLAINTIFF JANE DOE